295 F.2d 484
 Joseph CARROLL, Charles Peterson and Charles Turecamo, as Treasurer, Orchestra Leaders of Greater New York, Plaintiffs-Appellants,
v.
AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA, Herman D. Kenin, as President of said Federation, Stanley Ballard, as Secretary of said Federation, and George V. Clancy, as Treasurer of said Federation, Associated Musicians of Greater New York, Local 802, and Al Manuti, as President of Local 802, Max L. Arons, as Secretary of Local 802, and Hi Jaffe, as Treasurer of Local 802, Defendants-Appellees.
 Nos. 108-111.
 Dockets 27013-27016.
 United States Court of Appeals Second Circuit.
 Argued September 28, 1961.
 Decided October 17, 1961.
 
 Godfrey P. Schmidt, New York City, for plaintiffs-appellants.
 David I. Ashe, Ashe & Rifkin, New York City, for defendants-appellees.
 Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.
 FRIENDLY, Circuit Judge.
 
 
 1
 Plaintiffs are orchestra leaders and members of an unincorporated association known as Orchestra Leaders of Greater New York; they also are members of defendant American Federation of Musicians of the United States and Canada, an international union, and of the New York local, defendant Associated Musicians of Greater New York, Local 802, as, allegedly, union rules require them to be. The business of plaintiffs and the other orchestra leaders they claim to represent is the "single engagement" field. This consists of single performances on occasions such as weddings, college or high school dances, business conventions, club entertainments and the like, in contrast to the "steady engagement" field where musicians are hired on a long-term basis by employers such as television stations, hotels, restaurants, night clubs, and opera or symphony associations. In the "single engagement" field, the person or organization desiring the performance solicits, or is solicited by, an orchestra leader; the latter in turn obtains the musicians, called sidemen, who are to assist in fulfilling the engagement.
 
 
 2
 Plaintiffs on behalf of themselves and other orchestra leaders have brought four actions against the defendant unions and the latter's officers in the Southern District of New York, which have now been consolidated for trial. One of these, Carroll v. Associated Musicians of Greater New York, challenged a welfare fund promulgated by Local 802 as violating § 302 of the Labor Management Relations Act, 29 U.S.C.A. § 186; a temporary injunction granted by Judge Dimock, D.C.S.D. N.Y.1960, 183 F.Supp. 636, was affirmed by this Court, 2 Cir., 1960, 284 F.2d 91. Two actions attacked the unions' practices of establishing price lists and employment quotas as violating the antitrust laws; a motion for a preliminary injunction in one was denied by Judge Bryan in October, 1960, and a similar motion in the other was marked off for excessive adjournment in January, 1961. The fourth action challenged, under § 302 of the Labor Management Relations Act, a "tax," at one time 2% and later reduced to 1½%, which a by-law of Local 802 required leaders to deduct from amounts received for the services of members and pay to the Local, and a 10% "traveling surcharge," which Article 15 of the Constitution of the International required leaders to add to the price of engagements played by members outside the jurisdiction of their home local and pay to the International.
 
 
 3
 Plaintiffs' motion, dated March 21, 1961, which has given rise to the order here under review, was entitled in all four actions. It sought a temporary injunction against collection of the "tax" and the "traveling surcharge," and also against the defendants' vesting upon plaintiffs and other orchestra leaders "any economic or other reprisals (except expulsion from union membership or other purely intra-union penalty) because of their participation in the above-entitled actions or because of their failure to comply with the union laws and regulations whose legal validity is challenged in the complaints in the above-entitled actions; and from interfering, directly or indirectly, in any way whatsoever, with the business, employment, engagements, jobs or work opportunities of plaintiffs or the class they represent, and from precluding interrupting or interfering with the rights of plaintiffs or any of them to work as musicians in any place or upon any job or engagement whatsoever." Judge Palmieri denied the motion holding that "Complex and weighty issues of law and of fact are presented in these suits and serious economic interests of both sides are at stake," that "The voluminous papers submitted on these motions emphasize the need for a thorough and careful appraisal of the facts by a trial court"; that "the injunctions sought by the plaintiffs would disrupt strongly entrenched practices and procedures of the defendants with consequent uncertainty as to work and compensation patterns affecting many thousands of members belonging to the defendant unions"; that if a trial should result unfavorably to the plaintiffs, "there would be no adequate way to repair the harm done or account for the wages and jobs that may have been lost"; and that "the immediate benefit that could accrue to the plaintiffs by the granting of threshold injunctive relief does not outweigh the corresponding detriment that would be suffered by defendants should plaintiffs fail to prove their claims." Plaintiffs appeal from this denial, 28 U.S.C. § 1292(a) (1).
 
 
 4
 These reasons for refusing interlocutory relief that would interfere with the long-established system for establishing wage scales and employment quotas appear entirely sound. However, we are unable to find similar basis for refusing the injunction with respect to the "tax" or the "traveling surcharge" or to "reprisals" for failing to make such payments.
 
 
 5
 Section 302(a) of the Labor Management Relations Act, as amended by § 505 of the Labor-Management Reporting and Disclosure Act of 1959, makes it "unlawful for any employer * * * to pay, lend, or deliver, or to agree to pay, lend, or deliver, any money or other thing of value * * * to any representative of any of his employees who are employed in an industry affecting commerce," or "to any labor organization, or any officer or employee thereof" which represents any such employees. Although defendants deny that the orchestra leader is the "employer" of the sidemen and claim the father of the bride is the true employer, as indeed the contract form says, we think this contention, far from being serious or difficult, borders on the frivolous for reasons stated in another connection by the Court of Claims in Cutler v. United States, 1960, 180 F.Supp. 360, 362, — an opinion followed by Judge Dimock in his decision in Carroll v. Associated Musicians of Greater New York, supra, which we affirmed. There is, of course, no denial that the defendant unions are representatives of employees and are labor organizations representing employees.
 
 
 6
 Hence the only remaining question with respect to the applicability of § 302(a) to the tax and the surcharge is whether the "single engagement" field is "an industry affecting commerce." The verified complaints, incorporated by reference in the motion, alleged that plaintiffs and the class they represent "frequently fulfill single engagements outside of the State in which they usually operate and in which their principal offices are located" and that the revenues from such engagements run into millions of dollars a year. The answering affidavits did not challenge this but contented themselves with reliance on this Court's statement on the earlier appeal, 284 F.2d at page 92, that "The degree to which the sidemen employees of the leaders were `employed in an industry affecting commerce' * * * is an issue which can be more satisfactorily resolved on a full trial of the case." Defendants argue that, just as limitations on the scope of review of interloctuory orders lay behind our affirmance of Judge Dimock's preliminary determination that he was sufficiently satisfied of an effect on commerce, the same limitations require affirmance of what they consider Judge Palmieri's preliminary determination that he was not. Apart from the seemingly capricious results to which this argument leads, it overlooks that the issue with respect to "commerce" in the action relating to the welfare fund was considerably more troublesome than here. What had concerned Judge Dimock and led to our remark as to resolution by a trial was that Local 802's welfare fund regulations applied only to engagements within New York City and Nassau and Suffolk Counties, in New York state, 183 F.Supp. at page 638; there was thus a question whether activities of the industry crossing state lines could be considered. Here there is no such question. The Local's by-law imposing the "tax" and the provision of the International's Constitution imposing the "traveling surcharge" are not limited to engagements within the state; indeed, the latter applies only to engagements outside the Local's own jurisdiction, many, if not most, of which would be outside the state of New York. The case with respect to interstate commerce is thus immeasurably stronger than that before Judge Dimock; and if we were preliminarily satisfied of an effect on commerce there, we must surely be so here. We hold that defendants have thus far failed to raise any substantial issue that these two impositions did not relate to "an industry affecting commerce," United States v. Shubert, 1955, 348 U.S. 222, 75 S.Ct. 277, 99 L.Ed. 279.
 
 
 7
 It follows that, on the showing before the District Judge, the tax and the surcharge violated § 302(a)[1] unless they came within one of the exceptions of § 302(c). The only exception in any wise pertinent is subsection (4) which permits an employer to deduct from wages money constituting "payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment * * *." From what we have before us it would seem indeed that the "tax" imposed by the Local's by-law may have constituted the payment of membership dues although not denominated as such; however, defendants did not bring themselves within the exception since there were no written authorizations. Normally the 10% "traveling surcharge" is divided by the International three ways: 4/10ths goes to the local in whose jurisdiction the engagement was played, 4/10ths is retained by the International, and 2/10ths is paid to the members who played the engagement. The distribution to the local and to the employees themselves would seem quite clearly not to constitute membership dues. We are unable to determine from the material before us whether the payment to the International would be such but in any event no written authorizations were furnished.
 
 
 8
 The general considerations marshalled by the District Judge against the grant of temporary injunctive relief, which we find persuasive with respect to the union provisions as to salary scales and employment quotas, do not appear pertinent to the collection of the apparently illegal "tax" and "surcharge"; doubtless the sheer mass of papers and argument tended to distract the judge's attention from this single aspect of the case. It is true that plaintiffs apparently suffer no out-of-pocket loss from the tax and the surcharge on the sidemen, since the tax is deducted from the musicians' salaries and the surcharge is added to the price to the customer; however, if plaintiffs are right as to the illegality of these payments, as they seem to be, their conduct renders them subject to § 302(d), which makes them guilty of a misdemeanor carrying a fine of not more than $10,000, or imprisonment for not more than a year, or both. Defendants suggest that this sensitivity of the plaintiffs to criminal liability is somewhat recent; however, a court of equity ought not deny interlocutory relief to a person seeking its aid in terminating his criminal conduct simply because repentance has been late and may not have been motivated solely by respect for law. Neither will an injunction relating only to these payments entail the destructive consequences on employment feared by the District Judge; such detrimental effect as the injunction might otherwise have on the unions can be substantially cushioned by a provision, suggested by him and accepted by plaintiffs, that the amounts claimed by defendants to be collectible as "tax" and "surcharge" shall be paid into escrow, and by a further provision that the "tax" should continue to be paid directly to the Local to the extent that leaders are furnished with written authorizations complying with § 302(c).
 
 
 9
 Since plaintiffs were entitled to an injunction against being required to pay the apparently illegal tax and traveling surcharge, they were likewise entitled to protection against interference for failing to make such payments. They complain also of the denial of an injunction against reprisals for instituting and prosecuting the four actions. Appellees say there have been none for that cause, the only disciplinary action taken against plaintiffs and consequent threats to them having stemmed from nonpayment of the "tax" and "traveling surcharge" or other breaches of union regulations. Appellants' evidence does not negate this sufficiently to warrant us in reversing the denial of the broader injunction sought. An injunction limited to the payments and to reprisals for failure to make them, which should also direct appellees to retract any threats to musicians and prospective customers already made on that ground, is all that has been clearly shown to be required; if defendants should attempt reprisals against the plaintiffs for bringing or prosecuting the actions, a further application can be made and relief promptly given.
 
 
 10
 In holding that a temporary injunction should have issued to the extent indicated, we are not unmindful that, as Judge Sanborn stated a half century ago, it is "to the discretion of the trial court, not to that of the appellate court, that the law intrusted the granting or refusing of these injunctions, and the only question here is: Does the proof clearly establish an abuse of that discretion?" Love v. Atchison, T. & S. F. Ry., 8 Cir., 1911, 185 F. 321, 331. However, that does not mean that denial of a temporary injunction is to be free from review. Congress would scarcely have gone to the pains of amending the Evarts Act, 26 Stat. 826, 828 (1891), which had provided interlocutory review over the grant or continuance of injunctions as an exception to the general requirement of finality, so as also to include their denial, 28 Stat. 666 (1895),[2] and then of repeating the process when it enacted § 129 of the Judicial Code of 1911, 36 Stat. 1134, modifying 31 Stat. 660, (1900) in this respect, unless it had thought that meaningful duties were being imposed upon the Courts of Appeals. Moreover, as said by Chief Judge Magruder, "`Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors," In re Josephson, 1 Cir., 1954, 218 F.2d 174, 182; see, to much the same effect, Judge Learned Hand in Barnett v. Equitable Trust Co., 2 Cir., 1929, 34 F.2d 916, 920. In Ring v. Spina, 2 Cir., 1945, 148 F.2d 647, 160 A.L.R. 371, this Court reversed the denial of a temporary injunction founded on what the Court tentatively considered an erroneous view of the law; such a reversal occurred also in Perry v. Perry, 1951, 88 U.S.App.D.C. 337, 190 F.2d 601, where the denial below had been predicated on what the Court of Appeals regarded as an unduly restrictive interpretation of a contract. See also National Grain Yeast Corp. v. City of Crystal Lake, 7 Cir., 1945, 147 F.2d 711; Chicago, R. I. & P. R. Co. v. Switchmen's Union, 2 Cir., 1961, 292 F.2d 61, 71. Such considerations and authorities suffice to support reversal of the order to the limited extent of directing issuance of a temporary injunction consistent with this opinion; the detailed framing of the injunction is properly left to the District Judge. In order to expedite the entry of such an injunction, the mandate will issue forthwith.
 
 
 
 Notes:
 
 
 [1]
 This is subject to possible qualification with respect to so much of the 10% "traveling surcharge" as ultimately went to the performers themselves, with the International acting only as a conduit, a question we find unnecessary to decide
 
 
 [2]
 This was done because the implications of "the lack of all review over the action of a single judge in denying interlocutory injunctions," "had not been adequately considered," Frankfurter and Landis, The Business of the Supreme Court, 108-109