340 F.2d 228
 Julius SCHWARTZ, Buddy Kane, Robert Curtis, John C. Rosenmerkel, William Arnold, Frances Baron, Leonard O. Gaskin, Louis V. Schwartz, Herbert Wasserman, Judith Bregman, Solomon Kosarin and Glen Williams, Plaintiffs-Appellants,
v.
ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA, Defendant-Appellee.
 No. 7.
 Docket 28639.
 United States Court of Appeals Second Circuit.
 Argued September 22, 1964.
 Decided December 29, 1964.
 
 Godfrey P. Schmidt, New York City, for plaintiffs-appellants.
 Emanuel Dannett, New York City (Ashe & Rifkin, Henry Kaiser, Jerome Adler, David I. Ashe and Eugene Mittelman, New York City, on the brief), for defendant-appellee.
 Before LUMBARD, Chief Judge, and MOORE and SMITH, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 Plaintiffs appeal from summary judgment dismissing the first count in a two-count complaint, and holding that union "local tax" was not violative of law, in the United States District Court for the Southern District of New York, Richard H. Levet, District Judge. We find no error in the grant of summary judgment, and affirm the judgment.
 
 
 2
 The courts have already passed on another aspect of this controversy. In Wittstein v. American Federation of Musicians, etc., 326 F.2d 26 (2 Cir. 1963), cert. granted 376 U.S. 942, 84 S.Ct. 798, 11 L.Ed.2d 766 (1964), reversed 85 S.Ct. 300 (Dec. 7, 1964), an order granting summary judgment in favor of the plaintiffs on the second count of a two-count complaint was reversed by the Supreme Court.[1] Now before us is another order of the court granting defendant's motion for summary judgment on the first count of that complaint.
 
 
 3
 Involved here is the claim by the plaintiffs, sidemen[2] in the defendant Local, in behalf of themselves and others similarly situated, that a tax imposed on them by the Local was violative of Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186, Section 101 of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 411, and the Local's by-laws and standing resolutions. The tax, payable only when the member was active,[3] made the sideman personally responsible for its collection.
 
 
 4
 The district court, in dismissing the suit, held that there were no genuine issues as to any of the material facts raised by the pleadings and the supporting affidavits and concluded as a matter of law that: (1) the percentage levies were "membership dues" within the meaning of Section 302; (2) no violation of Section 101 was committed by the Local when it made the sidemen directly responsible for the payment of the tax since the obligation was from its inception an obligation of the sidemen; and (3) the collection of the tax directly from the sidemen was a lawful procedure under the Local's by-laws and standing resolutions. We hold that the case was ripe for summary proceedings and that the district court's disposition was proper.
 
 
 5
 The Local tax, first introduced in 1943, has since that time undergone considerable modification in the process of developing into the form that the plaintiffs found so objectionable. In September 1943, the Local adopted the following resolution:
 
 
 6
 "RESOLVED, That effective as of October 1, 1943:
 
 
 7
 "(a) There shall be payable by and collected from all members a 1 per cent tax on all engagements based on scale price therefor;
 
 
 8
 "(b) Said 1 per cent tax shall likewise be levied on all salaries paid to officers of our Local and to all members thereof regularly employed by the Union;
 
 
 9
 "(c) All income realized from items (a) and (b) above mentioned shall be allocated to the General Fund of our Local."
 
 
 10
 A standing resolution adopted September 9, 1955 increased the 1 percent tax on all engagements to 2 percent.[4] In 1960 another standing resolution was passed reducing the tax to 1½ percent and directing that the orchestra leader be held responsible for its collection and payment.[5] The leaders objected to this directive and sought judicial relief. An injunction was obtained prohibiting the Local from demanding or accepting the tax from the leaders, and we affirmed, excepting in our opinion only the situation where the sideman furnished written authorization to the leader directing him to pay the tax to the Local. See Carroll v. American Federation of Musicians of the United States and Canada, 295 F.2d 484 (2 Cir. 1961).
 
 
 11
 The obvious consequence of this injunction was to make it difficult for the Local effectively to collect the tax from the leaders; the Local's Executive Board responded by passing a resolution permitting the collection of the tax directly from the sidemen. Leaders were required to furnish the Union with the names and card numbers of all sidemen who performed single engagements, thereby making it possible for the sidemen to be billed individually. In the December 1961 issue of "Allegro," the official publication of the Local, the Union confirmed the apparent purpose behind this new procedure by printing a notice which stated in part:
 
 
 12
 "Because of the restriction on the existing methods of tax collection imposed on Local 802 in the injunction obtained by the Orchestra Leaders of Greater New York, the Union, pending final disposition of the case, is now obliged to collect taxes directly from the sidemen on single engagements * * *."
 
 
 13
 Subsequently, the Carroll action was dismissed on procedural grounds,[6] and in July 1962 a similar action was commenced by one Ben Cutler and others against the defendant and the Federation, culminating in the issuance of a new preliminary injunction in October of that year. See Cutler v. American Federation of Musicians, etc., 211 F.Supp. 433 (S.D. N.Y. 1962), aff'd 316 F.2d 546 (2 Cir. 1963), cert. denied 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963). Prior to the granting of the injunction, the August 1962 issue of "Allegro" contained the following statement:
 
 
 14
 "The obligation to pay the 1½% tax is imposed by our By-Laws upon each and every member of the Local. Do not be misled by the false statements and advice now being disseminated that only leaders collect and pay the tax to the Union. A pamphlet has been issued by `The Positive Action Ticket' to that effect. But that same pamphlet has conveniently overlooked the following language in the same Standing Resolution * * from which their leaflet quotes:
 
 
 15
 "`There shall be payable by and collected from all members a 1½% tax on all engagements based on scale price.'
 
 
 16
 "Language couldn't be clearer than this. The tax is `payable by * * * all members' and it is to be `collected from all members.'
 
 
 17
 "The obligation of the leaders is only a means designated to help the Union collect the tax from all members. Since this provision was inserted only for the benefit of the Union, the Union can waive it and insist that the members themselves, who are primarily responsible for the payment of the tax, should pay it directly."
 
 
 18
 From December 12, 1961, through December 1962, the Local implemented its new collection policy by sending bills for the tax to those sidemen whose names had been reported by the leaders. Over 25,000 bills were issued, and many were paid upon receipt. To further facilitate collection, a dues authorization form was prepared by the Local for use by the sidemen and was distributed commencing January 1963. Those sidemen who signed these forms thereby authorized the leaders for whom they performed to pay over 1½ percent of their wages to the Local "as dues," a procedure expressly excepted from our first decision in Carroll v. American Federation of Musicians of the United States and Canada, supra.
 
 
 19
 The Local tax was in this posture when the complaint in this action was filed in August 1963 — the tax was a direct tax on the sidemen collectible either by billing those sidemen whose names were reported by the leaders or by awaiting payment from the leaders in those cases where the performing sidemen had signed authorization forms. Since August 1963 the work tax has been both repealed and reinstated. By resolution passed at the membership meeting on September 9, 1963, the tax was abolished while the annual dues were increased from $24 to $80, effective January 1, 1964, and by a membership referendum vote two months later, the tax was reinstated and the annual dues reduced to $30, again effective January 1, 1964. To cover the interim period from September 9 through December, the Executive Board passed a resolution on September 12, 1963, whereby the tax, as it existed in August, was continued until the effective date of the new resolution, i. e., January 1, 1964.[7]
 
 I.
 
 20
 The basic issue raised by this appeal is whether the action was ripe for summary disposition. The summary judgment procedure provided for by Rule 56 of the Federal Rules of Civil Procedure can be availed of to bring an action to final conclusion only when the pleadings, depositions, and admissions on file together with any affidavits, show that there is no genuine issue as to any material fact.
 
 
 21
 Concededly, an important factual issue, crucial to the outcome of this case, is raised by the complaint, and were we to confine our examination to the pleadings alone, we would be compelled to conclude that summary proceedings were inappropriate here. Plaintiffs alleged in their complaint that the tax as it was introduced in 1943 was intended to be a tax levied on and collected from the leaders and that only when the defendant recognized the illegality of collecting the tax from the leaders did it attempt to effect the collection directly from the sidemen as some form of membership dues. We can discern no factual basis for supporting these claims. The chronological development of the levy, as described in the opposing affidavits, and the language of the resolutions themselves, make it unmistakably clear that the tax was and always has been a tax on the membership as a whole. What was changed was merely the method of collecting it.
 
 
 22
 Plaintiffs' claims of other factual issues similarly fail for lack of support in their affidavit. Defendant's allegation that no one has been forced to sign a deduction authorization is not disputed in plaintiffs' affidavit, and plaintiffs' argument that deductions have been made without written authorizations is supported only by a general claim which fails to specify that plaintiffs or any other particular persons have been the victims of such deductions.
 
 
 23
 The district court properly concluded that the only questions were questions of law and that the controversy could accordingly be resolved by summary proceedings. General allegations are not entitled to weight, and where, as here, the formal pleadings appear to raise issues of fact, but it is apparent that there is no genuine issue of fact, the court may proceed with a summary judgment. Federal Rules of Civil Procedure, Rule 56(e), as amended. Dressler v. M. V. Sandpiper, 331 F.2d 130 (2 Cir. 1964).
 
 II.
 
 24
 We agree with the conclusions reached by the district court that the Local's tax was within the statutory term "membership dues" in Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 186, and that the authorization forms were legal. We further hold, in agreement with earlier decisions of this court, that the leaders were "employers" and that the sidemen, as employees and as members of the Union, accordingly had sufficient standing to institute this action.
 
 
 25
 Section 302 makes it unlawful for any employer to pay money to a union representing employees employed in an industry affecting commerce except where deductions are made from wages in payment of union membership dues pursuant to express authorizations by the particular employees. There can be no violation and no basis for a claim under this section unless it can be shown that an "employer" has been charged with the making of illegal payments. In Cutler v. American Federation of Musicians, etc. supra, 316 F.2d at p. 548, this court expressly held that an orchestra leader in a single engagement field was an "employer" within the meaning of that term. See also Carroll v. Associated Musicians of Greater New York, 183 F.Supp. 636 (S.D. N.Y. 1960), aff'd 284 F.2d 91 (2 Cir. 1960).
 
 
 26
 Substantively, the plaintiffs contend that the term "membership dues" does not include a percentage levy of the type in dispute here and that the deductions made by the leaders were accordingly illegal check-offs. In support of this position, they define "membership dues" to mean the obligation uniformly imposed upon all members to maintain their membership and as not embracing non-regular, monetary charges imposed upon only a relatively small number of union members each year. On the basis of the fact that only 5,000 of the Local's 28,000 membership regularly earn money from musical engagements on which they pay the tax plaintiffs contend that the Local's tax cannot be denominated as "membership dues."
 
 
 27
 Plaintiffs' definition is too restricted and not consistent with the purpose behind Section 302. Congress intended by enacting this section to: (1) protect welfare funds for the benefit of employees; (2) prevent corruption in the collective bargaining process through bribery of employee representatives by employers and extortion by employee representatives; (3) protect against the possible abuse by union officers of the power they might wield if welfare funds were left to their sole control. Weir v. Chicago Plastering Institute, Inc., 177 F.Supp. 688, 692 (N.D.Ill. 1959), aff'd Employing Plasterers' Ass'n of Chicago v. Journeymen Plasterers' and Benevolent Society, etc., 279 F.2d 92 (7 Cir. 1960), on remand 186 F.Supp. 91 (N.D. Ill. 1960). See Arroyo v. United States, 359 U.S. 419, 425-426, 79 S.Ct. 864, 3 L.Ed.2d 915 (1959); Grajczyk v. Douglas Aircraft Co., 210 F.Supp. 702, 704-705 (S.D.Cal. 1962); United States v. Roth, et al., 333 F.2d 450 (2 Cir. 1964); United States v. Ryan, 225 F.2d 417, 426 (2 Cir. 1955), rev'd on other grounds, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). Expressly excepted was the employer's deduction of membership dues under circumstances where the employee had signed an authorization form of the kind specified.
 
 
 28
 In this case, we can discern no practical or logical reason for holding that "membership dues" do not embrace the percentage levy exacted by the Local. The tax was similar to membership dues in that it applied equally to all members of the Union who secured employment as sidemen. The fact that payment was contingent upon employment did not mean that the tax was an irregular assessment that could not qualify as dues. International Union of Mine, Mill and Smelter Workers v. American Zinc, Lead & Smelting Co., 311 F.2d 656 (9 Cir. 1963) ("Membership dues" held to include an employer's check-off of assessments); NLRB v. Food Fair Stores, Inc., 307 F.2d 3 (3 Cir. 1962) (Assessments included); Grajezyk v. Douglas Aircraft Co., supra ("Service fees" deducted and allowed). Cf. Brooks v. Local No. 30 United Slate, Tile and Composition Roofers, Camp and Waterproof Workers' Assn, 187 F.Supp. 365 (E.D. Pa. 1960).
 
 
 29
 The dues authorization forms distributed by the Local and signed by some of the employees were proper assignments under Section 302(c) (4).[8]
 
 III.
 
 30
 While plaintiffs argue that the tax exacted by the Local is not a form of membership dues under Section 302, they at the same time argue that it constituted dues within the purview of Section 101 (a) (3) of the Labor Management Reporting and Disclosure Act, 29 U.S.C.A. § 411(a) (3). Section 101(a) (3) makes it unlawful for a union to increase the rates of dues and initiation fees payable by the members as of September 14, 1959, except:
 
 
 31
 "(A) in the case of a local labor organization,
 
 
 32
 "(i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot;"
 
 
 33
 Plaintiffs charge that the Executive Board acted illegally on at least two different occasions by unilaterally ruling without a vote of the membership that the tax is and had been an obligation of the entire membership and that it would henceforth be collected from the sidemen directly. Crucial to their argument that the Executive Board violated Section 101 (a) (3) by imposing the levy directly on the sidemen is the proposition that the tax, in the form that it was introduced in 1943, amounted to a tax on the leaders and not on the Local's membership.
 
 
 34
 The district court is correct in holdng that these challenges to the Executive Board's actions are without merit. The tax has always been an obligation of the membership. When it was first originated it was to be "payable by and collected from all members," and that language has consistently reappeared in subsequent resolutions — significantly, it was never designated as a tax on the leaders. In ruling as it did, the Executive Board merely sought to remedy the inability of the Local to collect the tax through the orchestra leaders; a remedial measure of that kind is outside the scope of the limitation on dues increase in Section 101(a) (3).
 
 
 35
 We further agree with the district court that the Local's use of authorization forms and a direct billing procedure to collect the tax did not violate the by-laws and standing resolutions which imposed the tax.
 
 
 36
 The judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 This court in Cutler v. American Federation of Musicians, etc., 316 F.2d 546 (2 Cir. 1963), cert. den. 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963), held that Local 802 had violated Section 302 of the Labor Management Relations Act of 1947, as amended, by requiring orchestra leaders to collect and pay the "10% traveling surcharge." Wittstein concerned the legality of the procedure employed by the Union at its 1963 convention to abolish the judicially invalidated surcharge and to substitute therefor an increase in the per capita dues and initiation fees
 
 
 [2]
 Sidemen are employee-musicians hired by orchestra leaders to perform in their orchestras
 
 
 [3]
 There are approximately 28,000 members in Local 802, but of that number only about 5,000 are regularly employed as sidemen and thereby subject to the Local's tax
 
 
 [4]
 The standing resolution of September 9, 1955 provided as follows:
 "THEREFORE BE IT RESOLVED that in order to conserve and promote the welfare of Local 802 and its members
 "(a) There shall be payable by and collected from all members an additional 1 per cent tax on all engagements based on scale price therefor;
 "(b) Said additional 1 per cent tax shall likewise be levied on all salaries paid to officers and to all Local 802 members thereof regularly employed by the Union;
 "(c) All incomes realized from (a) and (b) above-mentioned shall be allocated as follows:
 "1. ¼ (one-fourth) of 1 per cent to be set aside for the purpose of continuing the campaign for live music.
 "2. ¼ (one-fourth) of 1 per cent to be set aside for a strike fund.
 "3. ½ (one-half) of 1 per cent to be allocated to the General Fund of our local to take care of the rising costs of administering the affairs of Local 802."
 
 
 [5]
 The standing resolution of September 26, 1960, was incorporated into the by-laws of the Local in the following language:
 "Effective as of January 1, 1961: The 2% tax payable on all engagements be reduced ½ of 1%. Therefore, on all engagements there is payable a total of 1½% tax to the General Fund. The leader shall be held responsible for the collection and payment of this tax.
 "There be no further specific allocation of ¼ of 1% to the Live Music Fund and no further specific allocation of ¼ of 1% to the Strike Fund.
 "(a) There shall be payable by and collected from all members a 1½ per cent tax on all engagements based on scale price, therefore: Leaders shall be held responsible for the collection and payment of this tax.
 "(b) Said 1½ per cent tax shall likewise be levied on all salaries paid to officers of our local.
 "(c) All income realized from items (a) and (b) above-mentioned shall be allocated to the General Fund of our local."
 
 
 [6]
 Carroll v. American Federation of Musicians of the United States and Canada, supra, was dismissed because the plaintiffs in that suit, having been dismissed from the Union, no longer had standing to continue the action
 
 
 [7]
 The Board resolution provided:
 "Section 7(a). In addition to any other dues provided for in these By-Laws required to be paid pursuant to the By-Laws of the A.F. of M., there shall be paid by all members who work on musical engagements work dues in the amount of 1½ per cent of the minimum wage scales earned by such members on all such musical engagements.
 "(b) The said work dues of 1½ per cent shall also be paid by all officers of the Local, based on their salaries.
 "(c) On all steady engagements or engagements under a collective bargaining agreement, the Leader or Personnel Manager, shall deduct such work dues from the salaries of the sidemen working on the engagements and transmit the dues so deducted to the Local together with the name and number of each sideman and the amount deducted from his salary. On all other engagements, if the Leader or Personnel Manager does not deduct such work dues from the salaries of the sidemen for transmittal to the Local, then he shall submit to the Local the names and card numbers of the sidemen working on the engagements. The failure or refusal of a Leader or Personnel Manager to carry out the requirements of this paragraph shall be a violation of these By-Laws for which he may be brought on charges and disciplined."
 
 
 [8]
 The authorization, in accordance with the proviso in Section 302, was not irrevocable for a period of more than one year. Any such authorization signed by an employee was made expressly revocable by that employeeat any time. (There was no applicable collective agreement which might have expired sooner.)