# Supreme Court of the Navajo Nation

**Thomas Largo, Gary Miller, and Roy Largo, Appellees,**
**v.**
**El Paso Natural Gas Company, Appellant.**
**Decided July 21, 1995**

## OPINION

Before YAZZIE, Chief Justice, CADMAN, Associate Justice, and SLOAN, Associate Justice (by designation).

Lawrence A. Ruzow, Esq., Window Rock, Navajo Nation (Arizona), for the appellant; and Earl Mettler, Esq., Shiprock, Navajo Nation (New Mexico) for the appellees.

Opinion delivered by YAZZIE, Chief Justice.

This is an appeal from a September 23, 1993 decision of the Navajo Nation Labor Commission ("Commission") which found appellant El Paso Natural Gas Company ("El Paso") in violation of the Navajo Preference in Employment Act ("NPEA") with respect to appellees Thomas Largo, Gary Miller and Roy Largo ("claimants"). The appeal presents essentially the same facts as those in our prior decision in *Largo v. Gregory & Cook, Inc.*, 7 Nav. R. 111 (1995). The issues of law raised in the two appeals are different.

I

El Paso is a Delaware corporation which is authorized to do business within the Navajo Nation. In 1991, it contracted with Great Plains Pipeline Construction, Inc. and Gregory & Cook, Inc. to undertake pipeline construction for the North Region Expansion Project in the Navajo Nation. El Paso was required to comply with federal regulations for testing and certification of pipeline welders hired to perform the contracts. The testing of prospective welders was administered by El Paso's employees.

The testing regulations establish technical standards for failure if certain welding defects are present upon a visual inspection and no additional test is required. Welders who passed were hired, and those who failed were not. El Paso effectively had control over hiring by Great Plains Construction, Inc. and Gregory & Cook, Inc. through the tests.

The Commission found that El Paso's welding test exceeded federal regulatory requirements in that all welders were required to take the test regardless of current certification. If a welder fails the test, the regulations permit retesting if in the joint opinion of El Paso and the contractor, the welder failed for conditions beyond his or her control. If a welder had subsequent training, retesting was also allowed. There was no minimum requirement for the training, and it could include work experience, practice or other welding.

On November 20, 1991, Thomas Largo held a valid welding certificate from El Paso, but did not have a certificate for the North Region Expansion Project. Neither Roy Largo nor Gary Miller held a current El Paso certificate. Each claimant took the welding test on November 20, 1991 to work for Great Plains Pipeline Construction, Inc.

The El Paso tester did not give a full explanation of the welding procedure to be tested, and the claimants were not provided with either written policies or an oral summary of the specifics of the test. They were tested separately from non-Navajo applicants.

The test procedure requires the use of "line-up clamps" to avoid weld defects. The claimants were not given clamps because none were available. They also were not provided with the required "welder's helper" which assures uniformity of temperature to avoid defects.

Each claimant was disqualified after a visual inspection of his work, and was not permitted to finish the weld. Neither radiograph nor destructive testing was used to confirm the soundness of the test welds. The three claimants were disqualified solely on the basis of visual inspection, and no objective measures were used.

Thomas Largo and Gary Miller also failed a December 20, 1991 retest administered by El Paso employees. The test coupons, which are the items used for the welding test, were not kept by El Paso. The coupons of other, non-Navajo employees were kept. Largo and Miller were failed without measurements which are required by the federal regulations El Paso relies upon.

Following the results of the second test, the claimants and other Navajos complained to the Office of Navajo Labor Relations. El Paso agreed to reevaluate the welding test coupons, but they could not be found. El Paso then agreed to retesting with the use of an x-ray to assess the weld in lieu of visual inspection. The agreement set the standards for how future tests would be administered.

The claimants applied for work with Gregory & Cook in January 1992, but were denied the right to a test by El Paso's inspector. Following another complaint to the Office of Navajo Labor Relations, El Paso again agreed to allow the claimants to retest in February 1992 in conjunction with another phase or loop of the North Region Expansion Project. In the meantime, several less experienced Navajo welders were tested in early January, 1992.

All three claimants were tested on March 18, 1992 by an independent inspector, and all passed. However, they were not hired because the available positions had been filled. The successful completion of the test, using objective standards,

shows that if the test had been done properly in November 1991, it is more than likely that the claimants would have received their certificates and employment.

Following a hearing on September 23, 1993, the Commission ruled that El Paso's conduct in testing violated the Navajo Preference in Employment Act, and this appeal followed,

## II

The record and briefs raise these issues:

1. Whether the Navajo Nation Labor Commission erred when it found that El Paso was an "employer" within the meaning of the NPEA?

2. Whether the Commission erred in refusing to grant a motion to dismiss?

3. Whether the Commission erred in refusing to find that the federal regulations preempted the NPEA as to these claims?

4. Whether the Commission erred in making its findings of fact, in refusing to make the findings offered by El Paso, or failed to make findings that show El Paso's causal fault?

5. Whether the Commission erred in its award of damages?

## III

El Paso asserts it is not an "employer" within the meaning of the NPEA because it is not the entity which hired or fired employees. Under the Act, an "employer" includes all persons, firms, associations, corporations, the Navajo Nation and all its agencies and instrumentalities, who engage the services of any person for compensation, whether as employee, agent, or servant." NPEA, Sec. 3(2).[1] There is no question that El Paso is a "corporation" for the purposes of the definition. It did not engage the claimants' services for compensation, because they would be paid by the contractors who hired them. Given the administration of the test by El Paso, which effectively controlled employment, was it an "employer" under the Act?

El Paso was permitted to enter the Navajo Nation through permissions granted to construct and maintain pipelines.[2] It is a foreign corporation which is authorized to do business within the Navajo Nation. While Great Plains Pipeline or Gregory & Cook were to be the claimants' actual employers, and while El Paso did not actually hire, supervise or pay the claimants, it had ultimate oversight and control over their work. By virtue of retaining control over testing, it was a gatekeeper for employment.

In *Carroll v. Associated Musicians of New York*, 183 F. Supp. 636, 638

---

1. The 1990 Amendments to the Navajo Preference in Employment Act have not been codified in the Navajo Nation Code. Therefore, we will cite to them as they appear in the Amendments.

2. Entry into the Navajo Nation is governed by Article II of the Treaty of 1868 between the United States of America and the Navajo Nation, 15 Stats. 667 (June 1, 1868), and by Navajo Nation legislation enacted in furtherance of the Treaty.

(D.N.Y. 1960), the court construed similar provisions of the National Labor Relations Act. It concluded that the term "employer" is determined by the actual relations of the parties. Here, the retention of control over the hiring process and supervision of the work by El Paso are important factors in determining the employer-employee relationship for purposes of the NPEA. The National Labor Relations Act definition includes "any person acting as an agent of an employer, directly or indirectly." *Office Employees' I.U. v. NLRB*, 353 U.S. 313 (1957). El Paso was Gregory & Cook's agent for the purpose of testing and determining which persons would be hired to do the construction work. Title VII of the U.S. Civil Rights Act of 1964 provides a similar definition of "employer." Given that the definition includes "any agent of such a person," an employer may not avoid liability by delegating discriminatory programs to third parties. *George v. New Jersey Bd. of Veterinary Medical Examiners*, 825 F.2d 111 (6th Cir. 1987). El Paso retained crucial control over the employment process to be deemed an "employer." Accordingly, we affirm the Commission's determination that El Paso was an "employer" under the NPEA.

## IV

The Commission denied a motion to dismiss pursuant to section 10(D)(2) of the NPEA. It provides for dismissal of complaints where there is no probable cause to believe a violation of the Act has occurred, a charge is not timely, or if the charge has been settled. The Commission found that none of these criteria had been met. We find that the Commission did not abuse its discretion in denying the motion. The Commission's ruling is affirmed.

## V

El Paso poses the issue of federal preemption of our law by the federal testing regulations for the first time on appeal. We address the issue due to its importance.

In *Arizona Public Service Co. v. Office of Navajo Labor Relations*, 6 Nav. R. 246 (1990), we addressed federal preemption of our labor law under Title VII of the U.S. Civil Rights Act of 1964, and held that given the specific exemption of Indian nation governments under that Act, there was no federal preemption of our anti-discrimination labor code provisions. Also in that opinion, we noted that federal courts take the position that federal statutes of general application may be themselves preempted by virtue of our Treaty of 1868 and principles of sovereignty and self-government. *Id.* at 261; citing *Equal Employment Opportunity Comm'n v. Cherokee Nation*, 871 F.2d 937 (10th Cir. 1989) and *Donovan v. Navajo Forest Products Industry*, 692 F.2d 709 (10th Cir. 1982). However, we do not reach the issue of whether the federal pipeline safety regulations cited here are a law of general application to the Navajo Nation. There is no factual basis to show that in fact El Paso's compliances with those regulations created an irreconcilable conflict with the Navajo Preference in Employment Act or El Paso's prior agreement. The

record shows that in fact, El Paso imposed more stringent standards than the regulations, and it failed to show how compliance with safety standards conflicted with the local law obligation to withhold discrimination against Navajos in employment. The preemption argument fails on the facts, if not on the law.

## VI

The findings issues are resolved through a review of the record and we give due deference to agency findings of fact. As to the findings in *Thomas Largo, Gary Miller and Roy Largo v. Gregory & Cook*, 7 Nav. R. 111, the factual issue in this case is whether the tests were administered in a fair manner. The Commission found that the tests were not fair, and we find no inconsistency with the findings in the prior case.

El Paso attacks the consistency of the 67 findings of fact in this case, but we find that each is supported by the record. The burden is upon El Paso to show that the findings of fact are unrelated to the evidence introduced before the Commission and it failed to do that. There is nothing in this record to show that the Commission did not have a sufficient factual foundation to support its findings.

Parties who offer findings are sometimes disappointed when a tribunal fails to adopt them, or where it draws different inferences from the theories offered by a party. Here, the Commission's analysis under our law is supported by the record, and we find no cause to disturb its findings.

## VII

We will not disturb the Commission's determination of damages, and we do not accept the assertion there was an overlap of damages. El Paso contends that the claimants did not want to take the January 1992 welding test. However, the Commission went back to the beginning of the testing process and affirmatively found that the November and December 1992 tests were administered unfairly. The claimants would have been employed but for the unfairness, and the Commission was justified in concluding the process was violative of the Act. It properly determined that damages were due and owing from November 20, 1991, despite any failure of the claimants to take the test in January 1992, when El Paso's inspector denied the opportunity to test.

The Commission properly concluded that there were continuing, repeated and obviously willful violations of the Act and El Paso's settlement agreement. The record supports the Commission's decision, and accordingly, the September 23, 1993 decision of the Navajo Nation Labor Commission is hereby AFFIRMED.

\* \* \* \*

SLOAN, dissenting
I respectfully dissent in this matter.