316 F.2d 546
 Ben CUTLER, Dan Terry, Ralph Flanagan, Marty Levitt, Vic
Ash, Claude Garreau (d/b/a Allen Meritt), and
Angie Bond, et al., Plaintiffs-Appellees,
v.
AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND
CANADA andAssociated Musicians of Greater New York
Local 802, Defendants-Apellants.
 No. 283, Docket 27946.
 United States Court of Appeals Second Circuit.
 Argued March 19, 1963.
Decided April 30, 1963.
 
 Emanuel Dannett, New York City (McGoldrick, Dannett, Horowitz & Golub, New York City, Herbert D. Schwartzman, Eugene Mittleman, and Jerome H. Adler, New York City, Henry Kaiser and George Kaufmann, Washington, D.C., on the brief), for defendant-appellant American Federation of Musicians of the United States and Canada.
 David I. Ashe, Ashe & Rifkin, New York City, on the brief, for defendant-appellant Associated Musicians of Greater New York, Local 802.
 Godfrey P. Schmidt, New York City, for plaintiffs-appellees.
 Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.
 LUMBARD, Chief Judge.
 
 
 1
 The American Federation of Musicians of the United States and Canada and the Associated Musicians of Greater New York, Local 802 appeal from a judgment of the District Court for the Southern District of New York which permanently enjoined the defendant unions from collecting from Ben Cutler, an orchestra leader member of said Local, the 1 1/2 percent tax or the 10 percent traveling surcharge imposed respectively by the Local's by-laws and the Federation's constitution. 211 F.Supp. 433 (S.D.N.Y.1962). This appeal questions Judge Levet's holding that under 302 of the Labor Management Relations Act, 29 U.S.C. 186, the payment of the tax and surcharge by Cutler is illegal and such payment may not be demanded of Cutler by the defendant unions. We affirm.[1]
 
 
 2
 The facts upon which Judge Levet based the permanent injunction are not contested on this appeal.
 
 
 3
 Cutler, a member of the defendant unions, is an orchestra leader engaged in the so-called 'single engagement' field. In other words, he leads orchestras which perform at weddings, dances, sports events and the like; these engagements always being for less than one week.
 
 
 4
 Local 802 imposes a Local Tax of 1 1/2 percent of the wage scale set by the union.[2] The union's by-laws require the leader to transmit to the local the 'Taxes' which he is to deduct from his own wages and the wages of the other orchestra members who are known as sidemen. No sideman has signed a written authorization for such a deduction. The 1 1/2 percent tax is not collected and transmitted if the orchestra performs outside of the jurisdiction of Local 802 which includes New York City, Nassau and Suffolk counties. But in such case, the leader is obligated, under the Federation's rules, to pay to the Federation an amount equal to 10 percent of the scale set by the local which has jurisdiction over the areas in which the performance is rendered.[3] The 10 percent is not deducted from the wages of the sidemen or the leader but is charged to the purchaser of the musical performance. Under the rules of Local 802 and the Federation, the leader is under no obligation to collect and pay over the 1 1/2 percent or the 10 percent unless he is a member of the union.
 
 
 5
 Each orchestra leader in the single engagement field generally plays an instrument himself. Ninety-eight percent of the performers who act as leaders on some occasions act as sidemen on others. Cutler is one of the two percent who always act as leaders. The leader negotiates contracts with purchasers of performances. The contracts are for a lump sum and do not itemize the distribution of that sum.[4] The leader distributes an amount equal at least to the union scale to each sideman, makes the required payments to the union, and keeps the remainder for himself.
 
 
 6
 Cutler brought this action on July 20, 1962 to restrain collection of the wage tax and the 10 percent surcharge. By agreement of the parties, Judge Levet used affidavits and the record in Carroll v. Associated Musicians of Greater New York,[5] wherein Cutler was a witness, as the source of the facts in this case and issued a preliminary injunction against the unions on October 17, 1962. Following further stipulation as to the use of those sources, Judge Levet made the injunction in favor of Cutler permanent on November 14, 1962, and from that judgment the defendants appeal.
 
 
 7
 Judge Levet found that Cutler, an orchestra leader in the single engagement field, is an employer within the meaning of the statute and that as such he may not be required to pay over to the unions the taxes and surcharges here involved. We agree. Section 302 of the Labor Management Relations Act, as amended, 29 U.S.C. 186, prohibits unions from demanding or employers from making payments to unions representing his employees unless there is a written authorization for certain deductions from wages, and reads in pertinent part as follows:
 
 
 8
 '(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value--
 
 
 9
 '(1) to any representative of any of his employees who are employed in an industry affecting commerce; or
 
 
 10
 '(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; * * *
 
 
 11
 '(b) (1) It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section.'
 
 
 12
 The appellants argue that the provision of the statute which prohibits payment by the employer to any representatives of his employees is not applicable here because Cutler is not an employer. They refer us to the Form B Contract, in use since 1941, which designates the purchaser of the performance as the employer of the musicians. In actual practice, however, the leader in the single engagement field has all effective control of the orchestra;[6] he hires the sidemen, decides how much is to be charged for the performance and what share is to be allocated to each sideman, subject of course to union minimum charges. He also pays all the expenses of each performance, workmen's compensation, insurance premiums, withholding taxes and other taxes. We find the designation in the Form B Contract to be a self-serving subterfuge which is not entitled to any weight. See Carroll v. American Federation of Musicians, 295 F.2d 484, 486 (2 Cir. 1961); cf. Cutler v. United States, 180 F.Supp. 360, 362 (Ct.Claims 1960). We agree with Judge Levet that Cutler is an 'employer' for the purposes of 302.
 
 
 13
 The appellants urge, however, that even if Cutler is an employer, he is also a union member and as such, he has certain duties to the union, including paying over the charges involved in this action. In other words, the leader's membership in the union enables the union to impose duties upon him which are inconsistent with what is prohibited him as an employer under 302. Appellants point out that non-members are not required by the union to pay over the taxes.
 
 
 14
 We do not agree that the leader's membership in the union immunizes him from the limitations which 302 imposes upon him because of his being an employer. He is not merely performing a ministerial task for the union, that is, collecting and paying over his and the sidemen's dues and exactions. In fact, the leader is not really collecting the tax and surcharge from the sidemen at all; he is actually paying the union out of his own share. It is true that union regulations require the 1 1/2 percent to be deducted from the scale wage. But the actual amount paid to sidemen is often above scale, dependent entirely upon bargaining between the leader and each sideman.[7] The requirement that the leader turn over the tax is undoubtedly considered in arriving at the payment, obviating the need for any deduction.[8] It is clear that the 10 percent surcharge is an exaction from the leader's share. The amount is never deducted from the sidemen's wages. In fact two percent of the scale wage is ultimately paid over to the sidemen.[9]
 
 
 15
 The unions argue that leaders may become members and pay union exactions even if they are self-employed, because they are in wage or job competition, or economic interrelationship with other union members, see Los Angeles Meat & Provision Drivers Union v. United States, 371 U.S. 94, 103, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962). This is true so far as the payment of dues is concerned. But the leader is here required to pay further exactions on a basis entirely different from that of other union members. We hold that the unions' demand for the 1 1/2 percent wage tax and the 10 percent surcharge payment violates 302.
 
 
 16
 Finally, appellants contend that the impositions did not relate to 'an industry affecting commerce.' Judge Levet found that the single engagement field is an industry affecting commerce, D.C., 211 F.Supp. at 442, and we agree for the reasons he stated there. See Carroll v. American Federation of Musicians, 295 F.2d 484, 487 (2 Cir. 1961).
 
 
 17
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The unions also appeal from the granting of a preliminary injunction in favor of over 70 other orchestra leaders. Judge Levet found that those leaders perform 'substantially in the same fashion' as Cutler. This finding is not clearly erroneous, and since we hold the tax and surcharge illegal, we affirm the granting of the preliminary injunction as to the 70 other leaders
 
 
 [2]
 Scale is the minimum which each performer may be paid for a performance within the jurisdiction of each local. The rule within the jurisdiction of Local 802 is that the leader must be paid at least twice scale plus eight percent of the total scale wages of the entire orchestra
 
 
 [3]
 The distribution of the ten percent is as follows:
 Four-tenths goes to the local in whose jurisdiction the engagement was played; four-tenths is retained by the Federation; two-tenths is paid to the members who played the engagement.
 
 
 [4]
 The Local's by-laws require that such contracts must be approved by the Local and the price must include at least the scale for each performer and double scale plus eight percent for the leader. See footnote 2, supra
 
 
 [5]
 The appeal in the Carroll case is decided this day. See 316 F.2d 574 (2 Cir. 1963)
 
 
 [6]
 We need not be concerned with those occasions when the father of the bride, at the height of his exhilaration, proceeds to lead the orchestra
 
 
 [7]
 There is no collective bargaining in this industry
 
 
 [8]
 For example, if the union scale were $50, and the sideman were paid the scale wage, $.75 would be deducted from his pay leaving $49.25. But if the leader agrees with the sideman that the latter is to 'clear' $50, the tax is not deducted, but is paid by the leader
 
 
 [9]
 See footnote 3. This is paid through the leader, as the union keeps little or no record of the musicians in whose behalf the leader pays the tax