**Si ZENTNER, Plaintiff,**

v.

**AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA and Associated Musicians of Greater New York, Local 802, affiliated with American Federation of Musicians of the United States and Canada, Defendants.**

United States District Court
S. D. New York.
Jan. 6, 1965.

Godfrey P. Schmidt, New York City, for plaintiff.

McGoldrick, Dannett, Horowitz & Golub, New York City, for defendant, American Federation of Musicians of the United States and Canada. Emanuel Dannett, New York City, of counsel.

Henry Kaiser, Washington, D. C., General Counsel to Defendant, American Federation of Musicians of the United States and Canada.

WEINFELD, District Judge.

Plaintiff, an orchestra leader-employer, seeks a preliminary injunction to enjoin the defendant American Federation of Musicians of the United States and Canada (hereinafter called Federation), an international union comprising 675 locals with a membership of 280,000, from expelling him from membership for refusal to pay what is referred to as "work dues equivalents" imposed by a number of its locals. He also seeks to preserve his status as a Federation member pending final determination of this suit.

The immediate controversy centers about plaintiff's refusal to make payments to two locals of which he was not a member, but within whose jurisdictions he had performed. The basic issue is the validity of Federation bylaws which permit locals to require nonlocal members to pay a percentage of their wages derived from performances within the locals' jurisdiction.

The plaintiff, who alleges this is a class action brought on behalf of some 5,000 other orchestra leader-employers similarly situated, seeks a declaratory judgment that the bylaws in question are void and that payments made thereunder violate Section 302 of the Labor Management Relations Act of 1947, as amended,[1] and Section 101(a) (3) of the Labor-Management Reporting and Disclosure Act of 1959.[2]

Plaintiff heads and conducts an orchestra of sixteen musicians, called sidemen, who travel with him throughout the United States performing engagements of various durations. Plaintiff holds membership in two Federation locals, Local 802, named as a defendant herein but not served with process, and Local 47. Each sideman is also a member of at least one Federation local. Plaintiff and sidemen alike pay such dues as may be imposed by their own locals, both in fixed periodic amounts and, where the local requires, based upon a percentage of the scale wage earnings.[3]

---

1. 29 U.S.C. § 186.

2. 29 U.S.C. § 411(a) (3).

3. Local 802's power to collect "local work dues" based upon a percentage of wage earnings of its own members has been upheld recently as a valid form of "membership dues." Schwartz v. Associated Musicians of Greater New York, Local 802, 2d Cir., 1964, 340 F.2d 228.

Prior to 1964, traveling members [4] of Federation who performed in jurisdictions other than their own paid either a ten per cent "traveling surcharge" to Federation [5] or, if not subject to this tax and if the local in whose jurisdiction they performed so required, a tax based upon earnings (not exceeding four per cent), provided it was also imposed upon the local's own members. At the 1963 Federation convention the ten per cent "traveling surcharge" payable to the national organization was abolished effective January 1, 1964.[6] The convention adopted a resolution, Recommendation 11, which authorized locals to require traveling members to pay a percentage of their scale wage earned within their jurisdictions, so long as the levy was uniformly imposed on members and nonlocal members without discrimination.[7] Thereafter, in March 1964, the Federation's International Executive Board codified this resolution in the following bylaw:

"Each Local may impose such dues (whether regular, periodic or based upon earnings), fees and assessments as shall be lawfully adopted

by such Local, subject to the following conditions and limitations:

\* \* \* \* \* \*

"(C) A Local may require any traveling member of the Federation who is not a member of such Local to pay a percentage of his scale wage earned from services rendered in connection with any performance within its jurisdiction, provided the Local uniformly requires its own members to pay the same percentage of their scale wages in connection with the rendition of the same classification of services." [8]

Payments based upon earnings which a local may impose are limited to four per cent.[9] The payments based upon a percentage of earnings payable by a local's own members have been referred to as "work dues"; those by traveling members, as "work dues equivalents." Failure of a traveling member to make any payment lawfully imposed by a local subjects him to automatic expulsion from the Federation.[10]

During the year 1964, following the passage of Recommendation 11 by the

---

4. A "traveling engagement" under Federation bylaws is "one in which any member performs outside the jurisdiction of his home Local," and the men so engaged are referred to as "traveling members." Article 15, Section 1.

5. Four-tenths of the amount collected was retained by Federation, four-tenths returned to the local in whose territory the engagement was performed, and two-tenths restored to the member himself.

6. This action was taken after judicial invalidation of the manner in which the "traveling surcharge" was collected. Cutler v. American Federation of Musicians, 316 F.2d 546 (2d Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963).

7. "Recommendation 11.

 \* \* \* \*

"6. No Local shall require any member of the Federation who is not a member of such Local to pay any dues based upon earnings ('taxes') unless such dues are

uniformly imposed by such Local upon its own members \* \* \*.

"7. Any traveling member failing to pay the lawfully imposed dues of a Local of which he is not a member shall be subject to automatic expulsion from the Federation."

8. Article 2, Section 8(C) of the Constitution, By-Laws and Policy, revised to September 15, 1964.

9. Article 2, Section 8(E) provides:
"No Local shall impose dues based on earnings of members of the Federation at a rate exceeding 4% of the scale wage for any services rendered."

10. Article 2, Section 9 provides:
"All traveling members, as a condition of their continuing membership in the Federation, shall make the payments that are prescribed pursuant to these By-laws. Any traveling member failing to make the payments lawfully imposed by a Local of which he is not a member shall be subject to automatic expulsion from the Federation."

convention and its implementation by the Executive Board, plaintiff and his sidemen performed in the jurisdictions of various Federation locals of which they were not members. Plaintiff refused to pay the "work dues equivalents" imposed by Local 148, Atlanta, Georgia, and Local 444, Jacksonville, Florida, which were in accord with those imposed under their bylaws upon their own members—two per cent (80¢) and four per cent (96¢), respectively. Thereupon, those locals preferred charges with Federation. Although there is a dispute as to whether plaintiff ever filed an answer to the charges, it is beyond question that he did not pay the "work dues equivalents" required by those locals, as well as others, within whose jurisdiction he performed while a traveling member of Federation.

On October 25, 1964 plaintiff was advised that the International Executive Board had sustained the charges preferred against him by the two above named locals, had awarded them, respectively, 80¢ and 96¢, "the work dues equivalents," had fined him $25 in each instance, and that unless the fines and awards were paid by November 20, 1964, suspension would follow.[11] On November 19, 1964 plaintiff commenced this action and obtained a temporary restraining order to preserve the status quo pending determination of his claims.

Plaintiff's basic contentions are that the "work dues equivalents" levied by a local within whose jurisdiction he played, but of which he was not a member, are unlawful under Section 101(a) (3) (A) of the Labor-Management Reporting and Disclosure Act of 1959,[12] which prohibits an increase of dues or the imposition of assessments except as prescribed therein,

and that Section 302(a) of the Labor Management Relations Act of 1947 [13] prohibits him as "an employer" from paying any money or "other thing of value" to a union representing his employees. He predicates his asserted right to injunctive relief on the ground that expulsion from Federation membership will deprive him of the services of Federation musicians and his long-time booking agent and, in consequence, of his livelihood.

The defendant not only denies that either statute is offended, but asserts that no case has been made out to justify preliminary relief, since plaintiff has shown no likelihood of success.[14]

## I
## SECTION 101(a) (3).

■■ Recommendation 11, the enabling provision, was enacted, as we have seen, at Federation's 1963 convention. At that convention the entire membership, including plaintiff, was represented by delegates in accordance with Federation's constitution and bylaws. While the plaintiff here challenges the voting system under which the resolution was passed by "majority vote of the delegates voting," its validity is no longer open to question.[15] It was binding upon every local, as well as every member of Federation. The International Executive Board, which constitutionally functions between national conventions, implemented Recommendation 11 by codified bylaws. As previously noted, those bylaws delegated to the locals, as a discretionary matter, authority to require traveling members to pay a percentage of the scale wage earnings from performance within the locals' jurisdiction upon condition that the same rate be uniformly applied to its own mem-

---

11. The plaintiff's continuing refusal to pay "work dues equivalents" has resulted in charges by other locals and additional awards and fines.

12. 29 U.S.C. § 411(a) (3).

13. 29 U.S.C. § 186(a).

14. Originally, defendant also contended that injunctive relief should be denied because plaintiff had an adequate and available legal remedy, namely, payment

under protest of $51.76, the amount of the award and fines, which would avoid the threat of expulsion and at the same time preserve his right to challenge the "work dues equivalents." Defendant, however, to secure a determination that plaintiff's legal contentions are untenable, withdrew that objection.

15. See American Federation of Musicians v. Wittstein, 379 U.S. 171, 85 S.Ct. 300, 13 L.Ed.2d 214 (1964).

bership not to exceed four per cent. Thus, the payments required of traveling members fall within the authority granted to locals by the convention as implemented by the bylaws. And when that authority is lawfully exercised by locals, it is as binding upon traveling members who come within its purview as Recommendation 11, which is its source.

The plaintiff contends, however, that the payments or the "work dues equivalents" imposed thereunder by locals upon traveling members are unlawful as in violation of Section 101(a) (3) (A), which prohibits any increase in the rate of dues except by a majority vote of "the members in good standing" taken secretly either at a meeting or by referendum.[16] The essence of his position is that if the "work dues equivalents" be considered as dues (which he disputes), the statute was violated, since as a nonmember of the locals he neither participated in any vote thereon nor was afforded any opportunity to do so. In short, he contends that unless such locals grant him the right of franchise with respect to the "work dues equivalents," they cannot be required of him or other traveling members of Federation—in sum, Congress intended that only those members who were given an opportunity to vote on an increase in the rates of dues or assessments were to be subject to them.

The Court is of the view that neither the law nor the facts supports plaintiff's position. The statute does not provide that after the membership of a local, by majority vote, approves an increase in the rate of dues, it shall apply only to members entitled to vote thereon. The statute merely defines the manner in which a local may lawfully increase dues and says nothing as to whom the increase may apply. A fair reading of the statute, whose plain language confines the vote within a local to "the members in good standing," gives no support to any claim that plaintiff as a nonmember of the locals in question was entitled to vote on the imposition of dues, rates of increase or assessments and, absent such right, that dues could not be collected from him. These were matters to be determined by the membership of the locals and not by traveling members of Federation who perform services within the jurisdiction of the locals. The construction contended for by the plaintiff would give nonmembers of local unions the right to vote on the adoption of dues or increases on terms of parity with local members. Nothing has been presented to suggest that such was the Congressional purpose. To extend the right of franchise to nonlocal members of the international organization is to disregard the plain language of the statute.

The "work dues equivalents," as the International Executive Board interpreted the action of the 1963 convention, are an "obligation [imposed] on traveling members as a condition of their Federation membership out of consideration for the services, protection and accommodation furnished to traveling members by the locals within whose jurisdiction they perform." No Federal statute prohibits a local of a national labor organization, when duly authorized by the membership of the latter, from requiring payments of nonlocal members who perform services within its jurisdiction and thereby benefit from the local's activities, particularly where such payments are uniformly applied to its own members. The payments by nonlocal members partake of the nature of those made by workers to unions

16. 29 U.S.C. § 411(a) (3) (A) provides: "Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot * * *."

of which they are not members but of whose activities they are the beneficiaries.[17]

Finally, there has been no showing by the plaintiff, much less any discussion of facts, that the "work dues equivalents" in the Georgia and Florida locals are "rates of increase" beyond those as of September 14, 1959, the effective date of the Act. As plaintiff himself points out in his memorandum of law, Article 16, Section 26 of Federation's bylaws has for many years permitted locals to impose a levy not exceeding four per cent upon traveling members not subject to Federation's "traveling surcharge" of ten per cent.[18] It has not been suggested that any levy imposed by the Florida and Georgia locals under Section 26 in effect on September 14, 1959 was less than the rate of the present "work dues equivalents" which plaintiff now resists. In such circumstance there has been no increase in the "rate" upon which a vote would have been required. Indeed, the papers are silent as to whether "engagement dues" imposed by the Georgia local or the "work dues equivalents" of the Florida local were enacted under the old Article 16, Section 26 provision or the more recent authority. It is of no consequence that the payments are styled "work dues equivalents," "engagement dues," "monies equivalent to dues," "work permit fees" or "tax."[19]

## II

### SECTION 302.

It is plaintiff's position that as an "employer" within the meaning of Section 302 of the Labor Management Relations Act of 1947, as amended in 1959,[20] he cannot lawfully be required to pay "work dues equivalents" or to furnish information regarding his sidemen-employees to locals of which he is not a member, for these are "money or other thing[s] of value." [21]

The short answer to plaintiff's contention with respect to the "work dues equivalents" is that they are levied upon him, not in his capacity as an "employer," but rather as a Federation member. In Cutler v. American Federation of Musicians,[22] upon which plaintiff relies, our Court of Appeals invalidated the Federation's "traveling surcharge" on the sole ground that "the leader is here required to pay further exactions on a basis

17. Cf. NLRB v. General Motors Corp., 373 U.S. 734, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1963).

18. Although defendant argues to the contrary, the ten per cent surcharge held unlawful by our Court of Appeals in Cutler v. American Federation of Musicians, 316 F.2d 546 (2d Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346 (1963), cannot be used as a standard against which "increases" or "decreases" in dues may be measured.

19. See Schwartz v. Associated Musicians of Greater New York, Local 802, 2d Cir., 1964, 340 F.2d 228.

20. An orchestra leader whose relationship to his sidemen is like plaintiff's is an "employer" within the statutory meaning. See, e. g., Cutler v. American Federation of Musicians, 316 F.2d 546 (2d Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346 (1963).

21. 29 U.S.C. § 186 provides in part: "(a) It shall be unlawful for any employer * * * to pay, lend, or deliver * * * any money or other thing of value * * *

"(2) to any labor organization * * * which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce * * *.

"(c) The provisions of this section shall not be applicable * * * (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year * * *."

22. 316 F.2d 546, 549 (2d Cir.), cert. denied, 375 U.S. 941, 84 S.Ct. 346 (1963). The Court found that the surcharge nominally levied on all members in practice came out of the leader's share of the total compensation received by the orchestra.

entirely different from that of other union members." In the course of its opinion the Court indicated that orchestra leader-employers could—as union members—be required to pay "union exactions," even those based upon earnings in the territory of locals of which they were not members.[23] So long as the levy applies to employer- and employee-members alike, in practice as well as in theory, Section 302 is wholly inapplicable.

 There is no merit in plaintiff's further claim that the statutory proscription of an employer's delivering "any * * * thing of value" to a labor organization supports his refusal to furnish locals of which he is not a member with information regarding his sidemen. Section 302 must be construed in light of its purpose, which was to prevent tampering by employers with the loyalty of union officials and to protect employers from the demands of disloyal union officials.[24] Information with respect to one's employees may be a thing of value, and in some circumstances may even constitute the subject of a transaction in violation of Section 302. But where, as here, an employer is requested merely to furnish "the names, addresses and locals of all members performing such engagement, and the scale wages received by each member" in order to secure enforcement of the union's dues structure, it would be a perversion of the Congressional purpose to construe the phrase "any * * * thing of value" to include the requested information.

The plaintiff has made no showing entitling him to preliminary injunctive relief and his application is denied.

Settle order on one day's notice.

---

23. "The unions argue that leaders may become members and pay union exactions even if they are self-employed, because they are in wage or job competition, or economic interrelationship with other union members * * *. This is true so far as the payment of dues is concerned." 316 F.2d at 549.

24. See Schwartz v. Associated Musicians of Greater New York, Local 802, 2d Cir., 1964, 340 F.2d 228; United States v. Roth, 333 F.2d 450 (2d Cir. 1964); United States v. Ryan, 225 F.2d 417 (2d Cir. 1955), rev'd on other grounds, 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956).