*1144 PAUL KELLY, Jr., Circuit Judge.
Petitioner National Labor Relations Board (“NLRB” or “Board”) seeks enforcement of its order issued in Oklahoma Fixture Co., 331 N.L.R.B. No. 145 (2000). In that order, the NLRB found that Respondent Oklahoma Fixture Company (“OFC”) violated Sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1), (5) (the “Act”). We have jurisdiction pursuant to 29 U.S.C. § 160(e) and we deny enforcement.
The facts in this case are not in dispute. OFC is engaged in the manufacture and installation of retail store fixtures. The United Brotherhood of Carpenters and Joiners of America, Local No. 943 (“Union”), is the exclusive bargaining representative for the “inside unit,” those employees who work at OFC’s Tulsa, Oklahoma facility. The collective bargaining agreement (“CBA”) in effect during the relevant period contains a union security clause which requires union membership “in good standing” as a condition of employment. II R. Doc. 32 at 4 (CBA Art. 2.1). That clause, however, also provides that “all employees covered by [the CBA] and hired on or after its effective date shall, on the ninety-first (91st) day following the beginning of such employment, become and remain members in good standing in the Union.” Id. The CBA states further that the only way a Union member “in good standing” can lose that status is through “failure to tender periodic dues and initiation fees uniformly required of all members.” Id. (CBA Art. 2.2). Although probationary employees are considered part of the bargaining unit, see id. at 4 (CBA Art. 1.1), probationary employees are excluded from certain benefits of the CBA, including seniority status, resort to grievance procedures, and paid holidays. See id. at 7, 12 (CBA Art. 5.1A, 8.2).
The Union established a “permit fee” to be paid by new inside unit employees (“probationary employees”) during the second and third months of their employment. The permit fee is equal in amount to the monthly dues that members pay to the Union. In 1989, OFC began the practice of deducting permit fees from the paychecks of inside unit employees who had signed checkoff authorization forms and forwarding the fees to the Union. In February 1997, OFC, without notice to the Union, ceased the practice of deducting and remitting the permit fees.
In response, the Union filed an unfair labor practice charge and the Board’s General Counsel subsequently issued a complaint alleging that OFC had violated sections 8(a)(1) and (5) of the Act by unilaterally changing the terms and conditions of employment. After a hearing, the administrative law judge concluded that OFC had engaged in the alleged unfair labor practice and the Board affirmed the judge’s decision.
In opposition to this petition for enforcement, OFC claims, as it did before the administrative law judge and the Board, that the deduction of the permit fees from the probationary employees’ wages and payment over to the Union violates Section 302 of the Act. That section, enacted as part of the 1947 amendments to the Act, ch. 120, 61 Stat. 136, 157 (1947), makes it unlawful for an employer to pay any money “to any labor organization ... which represents ... any of the employees of such employer who are employed in an industry affecting commerce....” 29 U.S.C. § 186(a)(2). The Board rejected this assertion in its decision below, finding instead that the deduction of permit fees fell within the exception of Section 302(c)(4) of the Act, which allows such payments where they are “in payment of membership dues in a labor organization” *1145 and the employer has received a written authorization for the deduction from the employee’s wages. 29 U.S.C. § 186(c)(4).
When reviewing an NLRB order, we grant enforcement if we find that the Board correctly interpreted and applied the law. N.L.R.B. v. Greater Kansas City Roofing, 2 F.3d 1047, 1051 (10th Cir.1993). The Board’s factual findings are conclusive “if supported by substantial evidence on the record,” 29 U.S.C. § 160(e), and we generally afford “great weight” to the Board’s determinations of questions of law and uphold them when within reasonable bounds. Greater Kansas City Roofing, 2 F.3d at 1051 (internal quotations omitted); see also Intermountain Rural Elec. Ass’n v. N.L.R.B., 984 F.2d 1562, 1566 (10th Cir.1993) (“[I]f the Board’s construction of [the Act] is defensible, it is entitled to considerable deference.”) (internal citations omitted). This case, however, requires that we interpret the term “membership dues” as stated in section 302(c)(4) of the Act. Thus, despite the deference we give to the Board, “[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.” Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).
We think it appropriate to begin by interpreting what constitutes “membership” under the CBA, an interpretation to which we owe no deference to the Board.[1] See Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 202-03, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991) (“ ‘Arbitrators and courts are still the principal sources of contract interpretation.’ ” (quoting N.L.R.B. v. Strong, 393 U.S. 357, 360-61, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969))); see also Int’l Union of Mine, Mill and Smelter Workers, Local 515 v. Am. Zinc, Lead & Smelting Co., 311 F.2d 656, 659-660 (9th Cir.1963) (holding that “membership dues” in Section 302(c)(4) included assessments, but remanding because “the meaning of the words ‘Union membership dues’ used in [the collective bargaining agreement] ... is not so clear as to be self-evident”). Under article 2.1 of the CBA, employees do not become “members in good standing” until the ninety-first day following employment.[2] “Member in good standing” status requires, under article 2.2 of the CBA, only payment of the “periodic dues and initiation fees required of all members.” Thus, “membership,” as defined in the CBA, contemplates only the minimal requirement of payment of membership dues and reflects the Supreme Court’s statement in N.L.R.B. v. General Motors Corp. that union membership can be a condition of employment only when “whittled down to its financial core.” 373 U.S. 734, 742, 83 S.Ct. 1453, 10 L.Ed.2d 670 (1962). Further, as stated in article 2.1 of the CBA, this minimal membership re *1146 quirement does not begin until the ninety-first day of employment. Although the Act does not define “membership dues,” we construe the term as connoting a payment related to membership of some kind. See Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (“The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole.”). The CBA evinces unmistakably that union “membership,” even at its most minimal level of commitment, i.e., its “financial core,” does not begin until the ninety-first day of employment.
Despite the fact that employees are not members of the Union until their ninety-first day of employment, the Board claims here, as it did in the decisions below, that the term “membership dues” as used in Section 302(c)(4) of the Act should receive a broad construction. While we agree that a broad construction of “membership dues” for purposes of Section 302(c)(4) “is consistent with the criminal character of the sanctions it embodies,” N.L.R.B. v. Food Fair Stores, Inc., 307 F.2d 3, 12 (3d Cir.1962), it is still an exception to a general rule. As such, we believe that, under the terms of this CBA and given the unambiguous statutory language, Section 302(c)(4)’s exception is not rooted in the Board’s rule-swallowing interpretation.[3]
Indeed, the broad construction of the exception in Section 302(c)(4) originated in a Department of Justice opinion letter that discussed whether “membership dues” included initiation fees and assessments. See Justice Department’s Opinion on Checkoff, 22 L.R.R.M. 46, 47 (1948). That opinion, however, was addressing a question as to whether “membership dues” included assessments where “the union constitution provides that such fees and assessments are included in the term ‘membership dues.’ ” Id. Further, the opinion noted specifically that the initiation fees and assessments in question were “incidents of membershqo.” Id. The cases upon which the Board relied in its opinion in this case, and which it relies upon in this petition, all involve circumstances where the additional fees in question were assessed against current members of the union. See, e.g., Schwartz v. Assoc. Musicians, Local 802, 340 F.2d 228, 230 (2d Cir.1964) (holding that a tax “payable by and collected from all members” was a “membership due” under Section 302(c)(4)); International Union, 311 F.2d at 659 (reversing the district court after determining that “membership dues” includes assessments from employee union members); Food Fair Stores, 307 F.2d at 5 (noting that the assessment was to be paid “by every member”).
The Board repeats several justifications from its decision for treating the permit fees as membership dues, namely: (1) the Union’s permit fee is “similar” to membership dues because the amount is equal to that charged to Union members; (2) the permit fee resembles an initiation fee because it represents an amount the employee must pay the Union prior to becoming a member; and (3) the permit fee is reason *1147 ably viewed as a charge to finance the cost of representing the probationary employees because even the probationary employees are part of the bargaining unit.
To begin, the fact that the amount of the permit fee is equivalent to the actual membership dues has no relevance to determining whether the fees constitute “membership dues” under Section 302(c)(4). That the pérmit fees unintentionally, or even intentionally, bear similarity in dollar amount to membership dues does not overcome the fact that the CBA excludes the probationary employees from any definition of “Union member.” The contention that the permit fees resemble an initiation fee is similarly unavailing, especially in light of the fact that, according to the Union’s “Dues & Permit Structure,” probationary employees must pay an initiation fee after ninety-one days of employment. II R. Doc. 29. Finally, the fact that probationary employees obtain a.free ride by receiving the benefits of collective representation without payment does not justify allowing the Union to receive payments in violation of the statute, especially when the probationary employees in this case are excluded from certain benefits. See Quick v. N.L.R.B., 245 F.3d 231, 245 (3d Cir.2001) (stating that the employee was “permitted to become a ‘free rider’ because of the draftsmanship of [the CBA] not because the NLRB erroneously interpreted that clause....”). Although the Board’s opinion suggests the permit fees could be reasonably viewed as covering the union’s cost for representing probationary employees, III Doc. 4 at 7, neither party contends, and we have found no indication that the CBA in this case contains an “agency shop” provision or that it provides for an agency or service fee.[4] Cf. Grajczyk v. Douglas Aircraft Co., 210 F.Supp. 702, 703-04 (S.D.Cal.1962).
We view our decision as adhering to Congress’ purpose for enacting Section 302, which included a concern “with corruption of collective bargaining through bribery of employee representatives by employers.” Master Insulators of St. Louis v. Int’l Ass’n of Heat & Frost Insulators, Local No. 1, 925 F.2d 1118, 1121 (8th Cir.1991); see also Schwartz, 340 F.2d at 233-34 (discussing purposes of Section 302). While we certainly do not suggest that abuse of the funds occurred in this case, “Section 302 is aimed primarily at the prevention of possible abuse and not at providing a remedy for abuse actually perpetratéd.” Employing Plasterers’ Ass’n v. Journeymen Plasterers’ Protective and, Benevolent Soc’y, Local No. 5, 279 F.2d 92, 97 (7th Cir.1960). Because we conclude that the remittance of permit fees in this case constitutes a violation of Section 302,' OFC’s practice of doing so, even though a long-standing one, cannot be enforced as part of the CBA nor could it become, as the dissent suggests, a valid amendment to the CBA. See Jackson Purchase Rural Elec. Coop. Ass’n v. Local Union 816, 646 F.2d 264, 266 (6th Cir.1981); see also N.L.R.B. v. BASF Wyandotte Corp., 798 F.2d 849, 853 n. 1 (5th Cir.1986).
Accordingly, the Board’s petition for enforcement is DENIED. •

. The dissent suggests the CBA is irrelevant, but then discusses the importance, under Communications Workers of Am. v. Beck, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), of the "purpose of a particular payment.” Without the CBA, the dissent's and the Board's attempts to discern a "purpose” for the permit fees in question are pure guesswork. Statutes must be applied to facts. The dissent’s repeated pleas for broad interpretation of Section 302 cannot mask the need to examine the CBA, regardless of whether the examination precedes or succeeds a discussion of the statute.

. At oral argument, counsel for OFC conceded that a probationary employee may join the Union before the probationary period ends. Be that as it may, the issue framed in this appeal pertains to probationary employees who are not Union members. Unlike the dissent, we decide only the issue before us on record facts.

. While the dissent characterizes these payments as “like membership dues,” the undisputed fact remains that the permit fees are not membership dues; neither do they constitute an agency fee or an initiation fee. Under the dissent's rationale, an employee's consent to the transfer of funds to a union would be the solitary requirement for meeting § 302(c)(4)'s exception. Surely, Congress intended some limitation through its use of "membership dues” rather than the all-encompassing interpretation the dissent postulates.

. As to the dissent's suggestion that our holding would render the payment of agency fees illegal under § 302, we note that the Supreme Court stated in General Motors that the "difference between the union and agency shop may be of great importance in some contexts, but for present purposes it is more formal than real.” 373 U.S. at 744, 83 S.Ct. 1453. Thus, the "practical equivalence” of agency fees to union membership dues, see id. at 743, 83 S.Ct. 1453, would render such payments safe under § 302(c)(4)'s exception. Here, no "practical equivalent” exists, leading to the Board’s straw-grasping justifications for allowing the permit fees to fall within the exception.