# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 10-1848

_____

Leroy Sanders; Stacy Ashcraft; Julee      *
Pratt; Dorothy Bailey; John Banks;      *
James Bennett; Jason Bottoms; Barbara   *
Bottoms; Randal Brannum; Treva      *
Brannum; Jack Bratton; Marlene      *
Burks; Lisa Burton; William Chaney;    *
Billy Chasteen; Sherry Chasteen;     *
Kenneth Cooperwood; Garrett W. Davis; *
Lakesha Decker; David Degrandchamp;   *
Debra Ann Dozier; Lenora Driver;     *
Meshell Duffy; Randall Eligh; Marlena   *     Appeal from the United States
R. English; Martez Freeman; Randal    *     District Court for the
Frolos; Twyla Glass; Delma Goodlow;   *     Eastern District of Arkansas.
April C. Hefner; Debra C. Hoofman;    *
Andrea M. Huhn; Thomas M. Hyde;    *
Roger Johnson; Antonio King; Jeff      *
Ladd; James F. Martin; Carol McCoy;   *
Jamal McCoy; Amy McDaniels; John B. *
Meriweather; Brian Miller; Jerri Ann    *
Miller; Lonnie Ray Miller; Zack      *
Mitchell; Amber L. Moon; Jennifer     *
Morris; Preston M. Morris; Marcus     *
Murray; Richard Neal; Brenda Nevels;   *
Terry Newnun; Jon Nicholson;      *
Andrette D. Penn; Jessica Poyner;     *
Chris Pruitt; Claudia Reynolds; Mark   *
Runions; William Scruggs; Foster Sims; *
Bryan Smith; Diane Stacy; Scott      *
Stephens; Antwan Sullivan; Dorothy    *
Thompson; Kristie Thrasher; Cheryl    *
Walker; Ramona Walker; Waszell     *
Watson; Debbie Wiggins; Jim Winner;   *

Barbara Woodard; Barbara Wren; Carol *
Yates; Teddy Williams; Mark Gaines; *
Helen Pruitt; Lori Lawrence; Linda J. *
Mell; Aaron Cooper; Dana Barnett; *
Bobby Swain; Jamie Swain; Carl *
McGahee, Jr.; Sheila Smith; Nathaniel *
Johnson; Rebecca Glick; Tabrea Aitkns; *
Irrelon Robinson, Jr.; Margie Ashby; *
Chris Duren; Sherman Durfee; Becky *
Price; George Barksdale; Billy Medler; *
Amy Harmon; Jamie Voyles; Lindell *
Bailey; Nicole Marie Henson; Theresa *
Jones; Debbie Belew; Jamie Mason; *
David Sterling, Jr.; Matthew Lloyd; *
Kenneth Middleton; Stephanie Stegall; *
Charles Hale; Nadine Segraves; William *
Sparks; Michael Goodwin; Gerald *
Mashburn, *
 *
        Appellants, *
 *
    v. *
 *
Kohler Company, *
 *
        Appellee. *

_____

Submitted:  January 12, 2011
Filed:  June 8, 2011

_____

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

_____

-2-

WOLLMAN, Circuit Judge.

Appellants appeal from an order granting summary judgment to defendant Kohler Company (Kohler) on a claim arising under the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101, and dismissing without prejudice supplemental state law claims. The appellants alleged that Kohler hired them as temporary workers in the midst of a strike and then summarily dismissed them at the strike's conclusion without providing the notice required under the WARN Act. The district court[1] held that Kohler was not subject to the notice requirements because the appellants failed to establish that a "mass layoff" had occurred, as defined under § 2101(a). The appellants assert that the district court misconstrued the meaning of "mass layoff" and made findings that improperly glossed over genuine issues of material fact. We affirm.

I.

Kohler manufactures stainless steel bathroom and kitchen products at its plant in Searcy, Arkansas. As of 2006, approximately ninety-five percent of the employees belonged to the United Auto Workers Local 1000 (Union). Collective bargaining negotiations between the Union and Kohler stalled in December 2006, and 247 union workers went on strike. Kohler shut the plant down shortly after the strike commenced. Three months later, it placed advertisements in local newspapers, interviewed potential applicants, and hired 123 replacement workers, including all 111 appellants in this action.

In March 2007, Kohler sent a letter to the new hires in which it took the position that because the strike was an economic strike, new hires had the status of "permanent replacement workers." That letter also stated that if the strike was deemed

---

[1]The Honorable Susan Weber Wright, United States District Court Judge for the Eastern District of Arkansas.

-3-

an unfair labor practices strike, as the Union claimed, then Kohler would "be legally bound to release [the new hires] from employment to the extent necessary to create openings for any strikers who may want to return to work." In November 2007, management sent an email to supervisors on the floor instructing them to communicate to the replacement workers that they were "permanent Kohler associates and any strike settlement would not affect that." Kohler and the Union settled their dispute in March 2008. As part of the settlement, Kohler agreed to reinstate the strikers. Notwithstanding its prior assurances, Kohler fired the replacement workers after the strike settled and returned 103 of the original 247 striking workers to their former positions.

In late March, the appellants filed a complaint, claiming that Kohler had failed to provide adequate termination notice under the WARN Act and alleging supplemental state-law claims for breach of contract, fraud, unjust enrichment, promissory estoppel, and civil conspiracy.

The WARN Act provides that covered employers must give at least sixty days' notice of a "plant closing" or a "mass layoff." § 2101(a). The Act defines a mass layoff as

> a reduction in force which (A) is not the result of a plant closing; and (B) results in an employment loss at the single site of employment during any 30-day period for . . . at least 33 percent of the employees (excluding any part-time employees); and . . . at least 50 employees (excluding any part-time employees)[.]

§ 2101(a)(3); see also Smullin v. Mity Enter., Inc., 420 F.3d 836, 838 (8th Cir. 2005). The appellants alleged that Kohler's actions constituted a mass layoff that triggered the notice requirements; Kohler denied that a mass layoff occurred and moved for summary judgment at the close of discovery.

It is undisputed that Kohler fired 123 replacement workers and returned 103 striking workers to their former positions. The district court relied on Oil, Chemical, and Atomic Workers Int'l Union v. RMI Titanium Co., 199 F.3d 881 (6th Cir. 2000), in which the Sixth Circuit held that only those workers who were fired and not replaced—those whose positions were eliminated—were part of a reduction in force and, therefore, only those workers would be counted for purposes of determining whether the numerosity thresholds of § 2101(a)(3) had been met. Id. at 885-86. Following RMI Titanium, the district court concluded that a reduction in force of 20 employees had occurred. Because a reduction in force of 20 employees did not meet the numerosity thresholds of § 2101(a)(3), the district court concluded that the termination did not constitute a "mass layoff" and therefore did not trigger the notice requirements of the WARN Act. Accordingly, it granted Kohler's summary judgment motion and dismissed the appellants' supplemental state-law claims without prejudice.

II.

We review *de novo* the district court's grant of a motion for summary judgment. South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 794 (8th Cir. 2005). Viewing the record in the light most favorable to the non-moving party, we consider whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Id.

The appellants contend that the district court erred in relying on RMI Titanium because that case misconstrued § 2101 and is factually distinguishable. The appellants next claim that even if RMI Titanium is applicable, the district court erred by making credibility determinations in Kohler's favor and thereby glossed over genuine issues of material fact that preclude granting summary judgment. Lastly, the appellants contend that the district court erred in failing to consider certain reduction-in-force calculation methods, which demonstrated that a "mass layoff" occurred or at least raised questions of material fact on that issue.

-5-

A.

The WARN Act does not define "reduction in force," nor have we considered its meaning in our WARN Act cases. The appellants contend that the district court erred in adopting the Sixth Circuit's interpretation in RMI Titanium. There, the defendant employer laid off a number of employees, the majority of whom were not replaced because of budgetary concerns. 199 F.3d at 883-84. Twenty-seven employees, however, were laid off, temporarily rehired, and then replaced by more senior employees who had been on an employment furlough. Id. at 885. The court reasoned that employees whose positions had been eliminated were part of a reduction in force and counted toward the numerosity requirements of a mass layoff, but the 27 employees who had been replaced were not part of a reduction in force and therefore would not be counted when determining whether the requirements had been met. Id. at 885-86.

The appellants contend that the dissent in RMI Titanium is better reasoned because it focuses on the number of employees who were fired, not just the number of positions that were eliminated. They maintain that a reduction in force of any size constitutes a "mass layoff" so long as the requisite number of employees experience an employment loss. Yet the statute defines mass layoff as "a reduction in force "which . . . results in" the requisite number of employment losses. The phrase "results in" implies causation. See CNG Transmission Mgmt. VEBA v. U.S., 588 F.3d 1376, 1379 (Fed. Cir. 2009) ("The plain meaning of the term 'results in' is 'causes.'") (citing Brown v. Gardner, 513 U.S. 115, 119 (1994) (concluding that the phrase "as a result of" can be "naturally read simply to impose the requirement of a causal connection")). Appellants' reading decouples "reduction in force" from the numerosity thresholds that modify it and eliminates the causal connection established by the phrase "results in." In contrast, we understand "reduction in force" to mean a net loss in the underlying productivity of a business, with the numerosity thresholds specifying the

extent of the net loss that must result from such a reduction in force to qualify as a "mass layoff."

We agree with the Sixth Circuit: employees who are fired but replaced are not part of a reduction in force and do not count as part of the aggregate number of employee layoffs that must be met to satisfy the numerosity thresholds of § 2101(a)(3). When a company fires one worker and replaces him with another, there is no net loss in the number of employees and no "reduction in force" as the term is commonly understood. See Matthews v. Allis-Chalmers, 769 F.2d 1215, 1217 (7th Cir. 1985) ("[B]y definition, when the employer reduces his work force he hires no one to replace the ones he let go.") *overruled on other grounds by* Oxman v. WLS-TV, 846 F.2d 848 (7th Cir. 1988). This reading is consistent with how we have construed "reduction in our force" in our employment discrimination cases. See, e.g., Ramlet v. E.F. Johnson, Co., 507 F.3d 1149, 1154 (8th Cir. 2007) (classifying reduction in force cases as those in which the duties of the plaintiff were eliminated or redistributed); Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1109 (8th Cir. 1994).

The appellants also contend that RMI Titanium is distinguishable on the facts because the 27 employees whose status was at issue were aware that they would eventually be replaced by the more senior employees, whereas Kohler repeatedly assured the appellants that their jobs were secure. As we read RMI Titanium, the workers' awareness of imminent replacement did not alter the legal analysis, much less prove decisive to the court's ultimate conclusion. Accordingly, we conclude that employees who are fired but replaced by others are not part of a reduction in force and are not part of the aggregate calculation that determines whether the numerosity threshold has been met.

B.

The appellants maintain that even if the district court interpreted the statute correctly, it erred by making impermissible credibility determinations regarding disputed facts. In advancing this claim, appellants lean heavily on the language in which the district court couched its factual finding: "The Court further finds no credible evidence to support plaintiffs' theory that Kohler created 123 new positions when it hired replacement workers." D. Ct. Order of March, 18, 2010, at 12.

This theory has its roots in a roster that Kohler produced listing all the individuals employed at the Searcy facility from its first day of operation until March 7, 2008. This roster listed 388 people, including the 247 striking workers. While before the district court, the appellants claimed that the inclusion of the striking workers on the roster confirmed that they were considered "active employees" by Kohler for the duration of the strike. Were that the case, they argued, Kohler created new positions when it hired replacement workers and eliminated those positions when it fired them, such that the numerosity thresholds had been satisfied even under the more exacting RMI Titanium test.

Kohler maintained that the striking workers were not "active employees" during the strike and suggested that the appellants had misconstrued the import of the roster to serve their own ends. Kohler submitted affidavits indicating that the striking workers had received COBRA notice and had received no salary or payment during the strike, which it claimed is a common-sense benchmark of employee status.

The district court determined that the striking workers were not "employees" of Kohler during the strike and that Kohler did not create new positions when it hired replacement workers, but filled extant positions that had been vacated at the onset of the strike. The district court further explained that the appellants' calculation erroneously included 32 striking workers who had departed voluntarily. Voluntary

departures do not constitute an "employment loss" under the express terms of the statute and therefore do not count in the aggregate calculation. See 29 U.S.C. § 2101(a)(6).

We disagree with the appellants' assertion that these determinations are inappropriate credibility determinations. The district court did not improperly weigh the evidence when determining how to classify the striking workers and did not err in determining that the appellants had failed to provide a viable legal theory on which to base its calculations. Moreover, though the appellants complain that it is unrealistic to think that 32 striking workers would depart voluntarily, they produced no evidence supporting an alternative scenario. Their conclusory statements on these issues fail to create a genuine issue of material fact and do not preclude the grant of summary judgment.

Finally, we reject the appellants' claim that the district court erred in considering and rejecting only two of the four theories it proffered. The district court may not have directly addressed each theory they put forth, but it clearly rejected them all by concluding that the reduction in force was insufficient to satisfy the numerosity threshold. We agree with the district court that the various theories offered by appellants fail, as a matter of law, to establish that a mass layoff occurred that would trigger the notice requirements of the WARN Act.

The judgment is affirmed.